```
              UNITED STATES DISTRICT COURT
                       FOR THE
                 DISTRICT OF VERMONT
```

```
David A. Lefebvre,              :
        Plaintiff,              :
                                :
    v.                          :     File No. 1:05-CV-255
                                :
Jo Anne B. Barnhart, as         :
Commissioner of Social          :
Security Administration,        :
        Defendant.              :
```

OPINION AND ORDER
(Papers 12 and 18)

Plaintiff David A. Lefebvre, proceeding *pro se*, brings this action claiming that while he was employed by the Social Security Administration ("SSA"), he was discriminated against on the basis of his disabilities. Lefebvre asserts his claims pursuant to Sections 501, 504 and 505 of the Rehabilitation Act of 1973, codified at 29 U.S.C. §§ 791, 794 and 794a; 42 U.S.C. § 1983; the Americans with Disabilities Act ("ADA"); and Vermont common law. Defendant Jo Anne B. Barnhart, Commissioner of the SSA ("Commissioner"), has moved for partial dismissal of Lefebvre's claims, arguing that Section 501 of the Rehabilitation Act is the exclusive remedy for a federal employee claiming employment discrimination. (Paper 18). The Commissioner further moves to strike Lefebvre's prayer for punitive damages. Id. Also pending before the Court is Lefebvre's motion for default judgment. (Paper 12). For the reasons set forth below, the Commissioner's motion for

partial dismissal and motion to strike are GRANTED, and Lefebvre's motion for default judgment is DENIED.

## Factual Background

For the purpose of the instant motions, the facts in the complaint will be accepted as true.  On July 6, 1999, Lefebvre was hired by the SSA as a claims representative.  His hiring was part of a special federal program "which places people with disabilities, with the assistance of the state's vocational rehabilitation program, in positions in the selective service without having to compete against non-disabled individuals for employment."  (Paper 1 at 2-3). Lefebvre's disabilities include epilepsy, fused lumbar discs, arthritis, and a learning disability.

After he was hired, Lefebvre attended a training course. Although non-disabled employees were trained in live programs and in the presence of their fellow employees, Lefebvre was trained alone via Interactive Video Training ("IVT") broadcast from Kansas City.  Lefebvre claims that this form of training was inadequate.  In support of his claim, Lefebvre cites an occasion on which instructors refused to repeat certain material that he had missed due to a seizure.  Lefebvre notified the SSA that the IVT unfairly impacted his disabilities, but the SSA "refused to provide him with job

training equivalent to that provided other employees or that reasonably accommodated his disabilities." Id. at 4.

Lefebvre was also provided an "on-the-job mentor." Id. This mentor, however, gave instructions that contradicted the IVT training, required Lefebvre to undertake tasks that other employees were not required to perform, and acted in a "discriminatory manner." Id. Lefebvre complained to his superiors about his mentor, but no remedial action was taken.

In November, 1999, the SSA provided Lefebvre with a 90 day plan of assistance to compensate for the poor training he had received. The plan called for the SSA to provide Lefebvre with numerous supports, including weekly meetings with management, monthly progress reports, and additional office help. Despite the existence of the plan, these supports were not provided.

On February 1, 2000, Lefebvre's supervisor gave him a list of alleged performance problems. On February 22, 2000, his supervisor again notified him in writing of performance problems. On February 25, 2000, Lefebvre filed a complaint of disability discrimination with the SSA's Equal Employment Officer. Later that day, his supervisor informed him that she had decided to terminate his employment. On February 28, 2000, Lefebvre's supervisor made a request for personnel action terminating him, effective March 10, 2000.

3

Lefebvre claims that he "was qualified to perform the job and would have been able to perform his job satisfactorily, particularly under the selective placement program, had he been provided with the appropriate, required training supervision and supports." Id. at 7. As a result of his termination, Lefebvre has allegedly been unable to find employment and his seizures have worsened. He also claims to have suffered from depression, emotional distress, "upset, anxiety, and other consequences." Id.

## Discussion

I. Motion for Default Judgment

Lefebvre has moved for default judgment, claiming that the Commissioner failed to file a timely answer or other responsive pleading. The Commissioner's answer was due on January 27, 2006. On that date, the Commissioner filed a stipulated motion for an extension of time in which to respond to the complaint. The motion was granted by the Court. A second such motion was also granted. The Commissioner subsequently filed a timely motion for partial dismissal.

Because the Commissioner's responsive motion, filed pursuant to Fed. R. Civ. P. 12, was timely, there is no basis for entering a default. See Finnegan v. Univ. of Rochester Med. Ctr., 180 F.R.D. 247, 249 (W.D.N.Y. 1998) (filing motion that addresses only part of complaint suspends time to respond

4

to entire complaint).  Furthermore, "[n]o judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes a claim or right to relief by evidence satisfactory to the court."  Fed. R. Civ. P. 55(e).  Lefebvre has not yet submitted sufficient evidence to establish his right to relief.  His motion for default judgment (Paper 12) is, therefore, DENIED.

II. Motion for Partial Dismissal

On a motion to dismiss, the Court must read the plaintiff's complaint generously. Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995).  Taking the allegations in the complaint as true, the Court must construe the complaint in a light most favorable to the plaintiff, and must draw all inferences in the plaintiff's favor.  Warth v. Seldin, 422 U.S. 490, 502 (1975); Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989).  The complaint must not be dismissed unless "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  EEOC v. Staten Island Sav. Bank, 207 F.3d 144, 148 (2d Cir. 2000) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  *Pro se* complaints are to be construed more liberally than complaints drafted by attorneys.  Haines v. Kerner, 404 U.S. 519, 520 (1972).

5

As noted above, Lefebvre is bringing his claims pursuant to a series of federal statutes as well as Vermont common law. The Commissioner now moves to dismiss "all of the claims except the claims under § 501 of the Rehabilitations Act," arguing that Section 501 provides the sole remedy for federal employees claiming discrimination. (Paper 18 at 3).

In Brown v. Gen. Serv. Admin., 425 U.S. 820, 829 (1976), the Supreme Court held that Title VII is the "exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." Accordingly, the petitioner in Brown was restricted to the procedures and relief set forth in Title VII, and "could not circumvent such requirements by bringing suit under another federal statute." Mathirampuzha v. Potter, 371 F. Supp. 2d 159, 161 (D. Conn. 2005) (citing Brown, 425 U.S. at 833). The Second Circuit has also held that Title VII procedures provide the exclusive remedy for federal employees claiming employment discrimination, and that since Title VII remedies are available under Section 501 of the Rehabilitation Act, federal employees are limited to suits under Section 501. Rivera v. Heyman, 157 F.3d 101, 104-05 (2d Cir. 1998).

Lefebvre is bringing suit under Sections 501, 504 and 505 of the Rehabilitation Act. In Rivera, having determined that Section 501 is a federal employee's sole avenue for relief in

a discrimination suit, the Second Circuit found that "section 504 does not provide [the plaintiff] with an alternative route for relief under the Rehabilitation Act."  Id. at 104. Lefebvre's claim under Section 504 is, therefore, DISMISSED.[1]

Lefebvre also cites 42 U.S.C. § 1983, but offers no discussion of his claims under that statute.  Moreover, in his prayer for relief, he cites only the Rehabilitation Act, the ADA, and Vermont common law.  (Paper 1 at 9).  Regardless of Lefebvre's reasons for citing § 1983, the Brown decision clearly held that Title VII is the exclusive avenue for suits such as this, and that permitting suit under other statutes would allow the "rigorous administrative exhaustion requirements and time limitations [of Title VII] to be driven out of currency."

Furthermore, § 1983 applies only to actions performed under color of state law.  42 U.S.C. § 1983.  The Commissioner is an agent of the federal government, and thus cannot be held liable under § 1983.  See District of Columbia v. Carter, 409 U.S. 418, 424-25 (1973).  Any claim under § 1983 is, therefore, DISMISSED.

---

[1] Section 505 merely specifies the remedies that are available under the Rehabilitation Act, and does not constitute a cause of action that is independent from Section 501.  29 U.S.C. § 794a(a)(1).

In his prayer for relief, Lefebvre seeks a declaration that the SSA violated his rights under the ADA.  The ADA, however, excludes the United States from the term "employer."  See 42 U.S.C. § 12111(5)(B)(I).  Therefore, Lefebvre may not bring a claim against the federal government under the ADA, and his ADA claims are DISMISSED.  See Rivera, 157 F.3d at 103; Moultrie v. Potter, 2006 WL 1495234, at *4 (S.D.N.Y. May 31, 2006).

Finally, Lefebvre seeks relief under Vermont common law.  The Brown decision clearly held that Title VII is the "exclusive, pre-emptive" remedy for discrimination claims arising out of federal employment.  425 U.S. at 829.  This holding has been applied not only as a bar to other federal statutory claims, but to state statutory and common law claims as well.  See, e.g., Mathirampuzha, 371 F. Supp. 2d at 162-63 (collecting cases); Marshall v. Nat'l Assoc. of Letter Carriers, 2003 WL 223563, at *6 (S.D.N.Y. Feb. 3, 2003) (dismissing as pre-empted federal and state statutory and common law claims brought by pro se Postal Service employee).  Consequently, Lefebvre's state law claims are also DISMISSED.

III. Motion to Strike Request for Punitive Damages

The Commissioner next moves to strike Lefebvre's request for punitive damages.  Section 505(a)(1) of the Rehabilitation Act authorizes the same remedies as Title VII.  See 29 U.S.C.

§ 794a. Title VII allows punitive damages "against a respondent (other than a government, government agency or political subdivision) . . . ." 42 U.S.C. § 1981a. Because the SSA is a government agency, the motion to strike Lefebvre's request for punitive damages is GRANTED. See, e.g., Baker v. Runyon, 114 F.3d 668, 669 (7th Cir. 1997).

## Conclusion

For the reasons set forth above, Lefebvre's motion for default judgment (Paper 12) is DENIED, and the Commissioner's motion for partial dismissal and motion to strike (Paper 18) are GRANTED.

Dated at Brattleboro, in the District of Vermont, this 16th day of June, 2006.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge