```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT


David A. Lefebvre,              :
          Plaintiff,            :
                                :
     v.                         :    File No. 1:05-CV-255
                                :
Jo Anne B. Barnhart, as         :
Commissioner of Social          :
Security Administration,        :
          Defendant.            :
```

OPINION AND ORDER
(Paper 26)

Plaintiff David A. Lefebvre, proceeding *pro se*, has moved for reconsideration (Paper 26) of the Court's prior Opinion and Order (Paper 23) granting defendant Jo Anne B. Barnhart's motion for partial dismissal (Paper 18).  For the reasons set forth below, the motion to reconsider is GRANTED, the Court's prior order is AFFIRMED, and Lefebvre's request for appointed counsel is DENIED.

Factual and Procedural Background

The facts of this case were summarized in the Court's previous order.  Briefly stated, Lefebvre claims that he was employed by the Social Security Administration ("SSA"), and that the SSA discriminated against him on the basis of his disabilities.  His suit is brought "under §§ 501, 504 and 505 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, 794, and 794a; 42 U.S.C. § 1983, and Vermont common law and involves the wrongful termination of employment."  (Paper 1 at 1).

Defendant Jo Anne B. Barnhart, Commissioner of the SSA ("Commissioner"), moved for partial dismissal, arguing that Lefebvre's exclusive remedy as a federal employee claiming discrimination was under Section 501 of the Rehabilitation Act.  (Paper 18).  The Court agreed (Paper 23), and Lefebvre has moved the Court to reconsider its ruling.[1]

## Discussion

I. Motion for Reconsideration

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted); see also Hammer v. First Unum Life Ins. Co., 2005 WL 525445, at *2 (S.D.N.Y. Mar. 7, 2005) (reconsideration appropriate only where "the Court overlooked (1) factual matters that were put before it on the underlying motion or (2) controlling legal decisions"). "Motions for reconsideration should not be granted where the moving party seeks solely to relitigate an issue already decided."  Shrader, 70 F.3d at 257.

---

[1] On August 31, 2006, at Lefebvre's request, the Court heard oral arguments on the motion for reconsideration.

Lefebvre alleges that the Court's ruling on the partial motion to dismiss was biased, and that materials provided with the complaint were overlooked.[2]  Among the facts that Lefebvre claims the Court failed to consider are his allegations of discrimination outside his period of employment at the SSA. He also argues that some of his filings, including the civil cover sheet, have not been contested, and that the causes of action identified therein should therefore be allowed to proceed.

With respect to the latter claim, the civil cover sheet is required "for the use of the Clerk of Court for the purpose of initiating the civil docket sheet."  It does not "replace nor supplement the filing and service of pleadings or other papers as required by law," and does not require a response. Accordingly, the Court does not rely upon the civil cover sheet when determining the scope of a plaintiff's claims.

Lefebvre also references an attachment to the complaint in which he set forth additional facts, including facts that pre-dated his hiring and post-dated his termination by the SSA.  (Paper 1-3).  The attachment further listed a series of "issues that are part of my case and complaint," including

---

[2]  The Court's prior ruling held that, in addition to being limited to a cause of action under Section 501, Lefebvre was not entitled to either a default judgment or punitive damages.  Lefebvre's motion for reconsideration addresses only the Section 501 issue.

failure to address reasonable accommodation requests; breach of contract; false advertizing; wrongful termination; reckless indifference; and retaliation.  Lefebvre's motion for reconsideration states that "[w]ith all the issues brought to the table by the plaintiff, he is not just claiming discrimination on the part of the defendant <u>during the time he was working for the agency</u> but the <u>discrimination that took place before and after his 8 months</u> time of work with Social Security."  (Paper 26 at 3) (emphasis in original).  As with the civil cover sheet, this attachment did not require a direct response.

   Further review of Lefebvre's complaint and attachments does not reveal any claims that were not initially considered by the Court.  Lefebvre attests that he is an individual with a disability, and that the SSA deemed him disabled "when it accepted him for appointment under the selective placement program."  (Paper 1 at 4).  Each of the pre-employment factual allegations involving the SSA, including appointment under the selective placement program and other conduct, took place in the context of Lefebvre's hiring.  Section 501 protects federal employees from discrimination in the hiring process.  <u>See</u> <u>Shiring v. Runyon</u>, 90 F.3d 827, 830-31 (3d Cir. 1996) (Section 501 "forbids [federal] employers from discriminating against persons with disabilities in matter of hiring, placement or advancement."); <u>see also</u> 29 U.S.C. § 791(b)

4

(requiring federal agencies to institute affirmative action programs "for the hiring, placement, and advancement of individuals with disabilities); 42 U.S.C. § 12112 ("No covered entity shall discriminate . . . in regard to job application procedures, the hiring, advancement, or discharge of employees . . . ."). Consequently, it is clear that Section 501 encompasses pre-hiring activities, and that claims of discrimination based upon such activities must be brought under that Section.

The majority of Lefebvre's post-termination claims appear to target the conduct of both the EEOC and the SSA. The EEOC is not a party in this case. According to the attachment to Lefebvre's complaint, the SSA offered to settle with him, but never completed the discovery process and never stipulated to a set of facts. Certain case records were destroyed on September 11, 2001, and a final decision was issued based "solely on information given to [the judge] by SSA." (Paper 1-3 at 7). To the extent that Lefebvre is charging the SSA with litigating before the EEOC in bad faith, the Court knows of no basis for reviewing discovery or negotiation-related issues that might have been handled in an administrative proceeding. See EEOC v. Waffle House, Inc., 534 U.S. 279, 291 (2002) (EEOC has exclusive jurisdiction and is "in command of" its process). If Lefebvre is alleging that the SSA's conduct constituted post-employment retaliation,

Title VII appears to encompass such a claim.  See Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997).

In any event, the essence of Lefebvre's claims, as he stated on page one of his complaint, is "the wrongful termination of federal employment."  (Paper 1 at 1).  Lefebvre seeks to bring claims regarding the SSA's alleged failures to reasonably accommodate his disabilities, and is concerned that the Court has limited his remedies to Section 501.  Section 501, however, provides broad remedies, and includes protections provided by the Americans with Disabilities Act ("ADA").  "The Rehabilitation Act, like the Americans with Disabilities Act, requires employers who are subject to the Act to make reasonable accommodations to disabled employees so that they may continue to work in jobs for which they are otherwise qualified."  Reynolds v. Barnhart, 2006 WL 1308672, at *2 (W.D.N.Y. May 11, 2006) (citing Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 85 (2d Cir. 2004)).  Indeed, the standards used to determine a violation of the Rehabilitation Act are similar to the standards that are applied under ADA.  See 29 U.S.C. § 794(d) ("The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 . . . ."); Rodriguez v. City of New York, 197 F.3d 611, 618 (2d Cir. 1999); Raines v. U.S. Dep't

6

of Justice, 424 F. Supp. 2d 60 (D.D.C. 2006) ("Although the ADA is inapplicable to federal employees, regulations promulgated by the Department of Labor require federal courts to use ADA standards when determining whether Section 501 of the Rehabilitation Act has been vioated.") (citing 29 C.F.R. § 1614.203). Consequently, Lefebvre need not argue that his claims go beyond his employment period in order to secure protections and remedies like those available under the ADA.[3]

The law in this Circuit is that the exclusive remedy for federal employment discrimination is under Section 501 of the Rehabilitation Act. Rivera, 157 F.3d 104-05. Claims of employment discrimination under other sections of the Rehabilitation Act, as well as other federal and non-federal claims, are barred. See Mathirampuzha v. Potter, 371 F. Supp. 2d 159, 162 n.1 (D. Conn. 2005) (collecting cases). This was the conclusion reached by the Court initially, and upon reconsideration of Lefebvre's claims and allegations, remains the opinion of the Court. The Court's initial order is, therefore, AFFIRMED.

---

[3] Lefebvre also argues that he may not have been a federal employee. Based upon the facts alleged in the complaint pertaining to Lefebvre's hiring, training, and termination by the SSA, this argument is clearly without merit.

II.  Request for Appointed Counsel

Lefebvre has also requested that the Court appoint him an attorney.  Civil litigants, unlike criminal defendants, do not have a constitutional right to the appointment of counsel.  Under 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel."[4]  In determining whether to appoint counsel for an indigent civil litigant, the Court considers numerous factors, and "exercises substantial discretion, subject to the requirement that it be guided by sound legal principles."  Cooper v. A. Sargenti Co., 877 F.2d 170, 172 (2d Cir. 1989) (citations omitted).

The Court's first inquiry is whether the plaintiff can afford counsel.  See Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1341 (2d Cir. 1994).  Although the Court denied Lefebvre's application to proceed *in forma pauperis*, a review of that application and Lefebvre's financial affidavit reveals that hiring counsel on an hourly basis might constitute a

---

[4] In a civil case, the Court cannot actually "appoint" counsel for a litigant.  Rather, in appropriate cases, the Court submits the case to a volunteer attorney.  The attorney considers the case, and decides whether he or she will volunteer to represent the plaintiff.  If no attorney agrees to represent the plaintiff, there is nothing more the Court can do.  See generally Mallard v. United States District Court, 490 U.S. 296 (1989).  Thus, even in cases where the Court finds it is appropriate to request volunteer counsel, there is no guarantee that counsel will actually volunteer to represent a plaintiff.

hardship for Lefebvre and his family.  The Court will, therefore, assume for purposes of the present motion that Lefebvre is unable to afford counsel,[5] and that he has made diligent efforts on his own to retain *pro bono* counsel.

Irrespective of financial considerations, however, the merits of this case are not sufficiently clear for the Court to seek out counsel on Lefebvre's behalf. Although Lefebvre's complaint sets forth his allegations of fact, the defendants have not yet provided a substantive response.  The Court is also aware that Lefebvre was unsuccessful in proceedings before the EEOC.  Consequently, it is difficult for the Court, at this time, to determine that Lefebvre's claims are of sufficient merit to warrant appointed counsel.  See Hodge v. Police Officers, 802 F.2d 58, 60-61 (2d Cir. 1986) (consideration of merits is a "threshold matter").

Other factors for a court to consider while contemplating appointment of counsel are: whether conflicting evidence requiring cross-examination will be the major proof presented to the fact-finder; the ability of the plaintiff to present his case; the complexity of the legal issues involved; and any special reason why appointment of counsel would be more likely to lead to a just determination.  Hodge, 802 F.2d at 60-62.

---

[5] If Lefebvre files a future motion for appointment of counsel, the Court may require either additional or updated financial information.

In this case, it is not clear whether the defendants will be contesting Lefebvre's factual claims.  As a result, it is not clear that cross-examination will play a significant role in the presentation of facts.  Lefebvre informs the Court that he has "learning issues," but has nonetheless shown an ability to present his claims, both legal and factual, in a timely and thorough manner.  If, at some point in the future, Lefebvre believes that the complexities of the case are such that he cannot proceed *pro se*, and that he satisfies the other criteria set forth above, he may file a motion for appointment of counsel for the Court's consideration.  At this early stage in the case, however, Lefebvre's request for appointed counsel is DENIED.

## Conclusion

For the reasons set forth above, Lefebvre's motion for reconsideration (Paper 26) is GRANTED, and upon reconsideration, the Court's prior order (Paper 23) is AFFIRMED.  Lefebvre's request for appointed counsel is DENIED.

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 13th day of September, 2006.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge